## Damron v. Johnson.

(Decided October 21, 1921.)

### Appeal from Pike Circuit Court.

1. Elections—Primary Elections—Declared Purpose to Expend Money
   —Evidence.—The declared purpose of a candidate in advance of
   a primary to expend therein certain sums unlawfully to procure

a nomination will not be accepted as conclusive evidence that he did so expend the same, and especially when the direct evidence shows that he did not.

2.  Elections—Primary Elections—Unexecuted Intention to Expend Money.—An unexecuted intention by a candidate to unlawfully expend money to secure a nomination in a primary, in the absence of affirmative evidence that he did so expend at least a part of it, will not deprive him of the nomination.

3.  Elections—Primary Elections—Use of Money—Evidence.—Although the evidence furnishes grounds for strong suspicion that a candidate furnished part of the money which went into a pool with candidates for other offices, and although there is plenty of evidence that the pooled money was used in his behalf for corrupt purposes, there being no affirmative evidence either that he furnished part of the pooled money or that it was used in his behalf with his knowledge for corrupt purposes, he will not be deprived of his nomination secured at such primary.

HAZELRIGG & HAZELRIGGG, JNO. D. CARROLL and JOSEPH D. HARKINS for appellant.

J. J. MOORE and WILLIS STATON for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On the former appeal of this case (192 Ky. 350) only questions of practice and pleading in primary election contest cases were involved, and the court in that opinion reversed the judgment for a trial on the merits.

Upon the return of the case such trial was had and the contest of appellant was dismissed and the appellee adjudged to be the Republican nominee for sheriff of Pike county.

There is pending in this court an appeal from the Pike circuit court, of Charles v. Flanary, this day decided, wherein all the questions made and discussed on this appeal are disposed of except the single question whether the evidence herein sufficiently connects the appellee with the corrupt use of money in the primary election to justify the court in declaring that although he received a majority of the votes he is not entitled to the nomination for that reason, and that appellant, who received the next highest number, should be declared the nominee.

It may be safely stated that the evidence unmistakably shows the use of an enormous corruption fund at the primary and that it satisfactorily shows appellee to

have been to a great extent a beneficiary of the expenditure of that fund. In fact the record furnishes astonishing evidence of the amount of funds which certain candidates in the primary and their friends had raised or intended to raise for election purposes. It is hardly believable that a candidate for a nomination for sheriff would contemplate the spending of or arrange for the raising of a twenty thousand dollar fund to be expended in one county to secure only a nomination of a party for the office of sheriff; and yet it stands admitted by the appellee himself that he and his family and friends had arranged for such a fund and had contemplated its expenditure in the primary up to the Tuesday before when his chief opponent withdrew. He says, however, that after such withdrawal he regarded his nomination as practically assured and therefore the fund was not expended and, on the contrary, he only expended the sums shown by his election report, which were within the statutory limit.

The evidence discloses that in the primary certain candidates for different offices pooled their interests in certain precincts or parts of the county, and the workers were directed to and did work for this slate as represented by the pool, and that when a vote would be procured certain slips, already prepared, would be handed to the voter with an indication thereon of the persons for whom he was to vote and the worker would, either before or after the voting, reward the voter to the extent of the agreed amount, or, as some of them have said, "make him a present."

That appellee was the beneficiary to a great extent of this pooling arrangement is sufficiently shown, but whether the evidence shows that he actually put up any money in the pool, or that the same was expended by the workers for his use and benefit with his knowledge, is the thing we must determine under the evidence.

In this case, as in the case of Hardin v. Horn, 184 Ky. 548, it may be said that the evidence furnishes ground for a strong suspicion that appellee furnished some of the money that went into the pool, and there is plenty of evidence that the pooled money was used in his behalf for corrupt purposes, but there is only an inference that it was so used with his knowledge, and the only evidence relied on by appellant as affirmative evidence of its use with his knowledge is that of three witnesses whose evidence we will discuss.

J. B. Polley states that he had a brother who was a candidate for county clerk in the primary and that on the Wednesday before the primary he had a meeting with appellee and others wherein he said to appellee that there was an understanding between them that at the proper time appellee and his brother were to put up their money together and make the fight together and that the time had come for something to be done along that line; that in response to this appellee said: "My money is done out. I put my money in with May in the other side of the county . . . . I couldn't do you any good with that part of it; it is on the Tug side of the county . . . What I have on this side I will give you the names of the men who have it and you can put yours with it;" that appellee indicated that he had put in with May on the Tug side of the county four thousand dollars, and that May was a candidate against witness' brother for county clerk; and that appellee said he could not tell who had that money on the Tug side, but if he would wait until tomorrow he would give him in writing the names of the persons who had the money on the other side of the county, but that he never had done so; that he supposed the money referred to by Johnson was put up by him for the purpose of influencing voters; that Johnson did not, in fact, put up any money with him or his brother to his knowledge, but said that because of Scott's withdrawal he had been saved eight thousand dollars and that before such withdrawal he had expected to put in something like sixteen thousand dollars. On cross-examination he said that he did not know whether Johnson had spent a dollar in the campaign, and never saw a dollar of his money, and never saw a dollar spent for him, although he was interested in the primary all the way through on behalf of his brother.

The evidence is wholly denied by the appellee in so far as it relates to the putting up of money by him with May or anybody else to be used in the primary, but he admits that he probably told Polley that the withdrawal of Scott had saved him his money and that he would have had to put up a lot of money to defeat Scott, and admitted that he probably said that there would have been as much as fifteen thousand dollars in the race if Scott had continued in it, but that after Scott's withdrawal he considered himself virtually without opposition and there was no longer any necessity for his expending a large

sum of money, and that thereafter he only kept up his organization sufficiently to get out his vote and that he did not, in fact, give out any campaign funds to any part of the county.

None of the other persons present at that meeting are introduced as witnesses, but it is stipulated that one of them would state that he heard no such conversation, but that during a part of the time he was present he was engaged in a private conversation with other participants in that conference. Under this qualification in the stipulation the evidence of the other witness being purely negative is of no value whatsoever.

The evidence of Polley, accepted at its full value, is only that the Wednesday before the primary Johnson stated that he already had his money out, which means only that at that time Johnson had placed money in certain precincts of the county to be expended, but cannot be accepted as a statement that he had actually expended any of it for corrupt purposes. We not only have the evidence to the contrary of Johnson himself, specifically denying that he made any such statements to Polley, but we have his further evidence to the effect that, in fact, he did not expend any money for corrupt purposes in the election or for other purposes except as shown by his election statements.

So that if we accept fully the statement of Polley we only have the expressed intention of Johnson on the Wednesday before the primary to expend therein certain sums of money, but we have as opposed to that the explicit statement of Johnson himself, made under oath since the primary, that he did not expend that money, and we have Polley's statement that he does not know that he did.

The declared purpose of a candidate in advance of a primary to expend therein certain sums unlawfully cannot be accepted as conclusive evidence of the fact that he did expend such sums; and especially when the direct evidence shows that he did not.

The witness, Charles Ratliff, states that on the primary election day he was at one of the Pond Creek precincts and that appellee, Johnson, was there, and on that afternoon Johnson pulled out of his pocket twenty-five dollars in small bills and gave it to him, and said to him at the time that it was not his (Johnson's) money, but that it was either May's or Flanary's, and the witness could not remember which; that he used that twen-

ty-five dollars in the election and procured a number of votes with it for a certain pool or combination, the names being indicated on a slip made out by others and handed to the voters, and that Johnson's name was on each of these slips.

This evidence of Ratliff is specifically denied by the appellee, and without going into detail it may be said that other evidence in the record so far tends to discredit Ratliff as that we cannot accept his statement over that of appellee.

In addition to the above evidence the appellee himself stated that on the day of the primary he went to the Pond Creek precincts; that there were five precincts on Pond Creek, where there was a very heavy vote, and that the voters were scattered up and down that stream for about ten miles and many of them would not go to the polls unless automobiles were sent for them, and he accordingly took with him there on election day between nine hundred and one thousand dollars for the purpose of hiring, if necessary, all automobiles that might be needed in those five precincts to get his friends to the polls; but that when he got over there he found that it was not necessary to expend any considerable portion of that money and that he expended very little of it for that or any other purpose and brought it back with him to Pikeville, or a large portion of it; that when he reached Pikeville he took it to his vault in the county clerk's office and placed it there, and a day or two later took it out and left it in his office for awhile and then deposited it in the bank. That he did have a considerable sum of money in his office a day or two after the primary is shown by two other witnesses.

If it may be assumed from this statement of appellee that he took this large sum of money with him to Pond Creek for the purpose of corrupting voters, it seems to be satisfactorily shown that as a matter of fact he did not carry out that purpose, for the evidence is convincing that he spent only a small portion of it and returned to Pikeville with nearly all of it.

While there is shown upon the part of appellee the admitted purpose to raise and expend a large corruption fund in the primary up to the time of Scott's withdrawal, and while there is an admission by him that he took approximately one thousand dollars to Pond Creek, which we may fairly assume was not altogether intended for legitimate use, the essential fact remains that there is

a failure of affirmative evidence to show that he actually expended any money for corrupt purposes or expended any sum in excess of the statutory limit.

An unexecuted intention by a candidate to unlawfully expend money to secure a nomination in a primary in the absence of affirmative evidence that he did so expend at least a part of it, will not deprive him of the nomination.

We have, therefore, reached the conclusion—not without hesitation in the light of all these suspicious circumstances—that there is no such satisfactory evidence as will justify the court in holding that appellee was guilty of such corrupt practices as will deprive him of this nomination.

It is the judgment of the court that appellee is the nominee of the Republican party for sheriff of Pike county, and this fact the clerk of this court will certify to the proper officials, and issue the mandate at once.

Judgment affirmed.