# Bailey v. Turner et al.

Oct. 23, 1945.

Wallis M. Bailey for appellant.

Wells & Wells, Wheeler & Wheeler and Joe P. Tackett for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

James W. Turner, Jasper H. Preece, J. F. Bailey, W. J. Ward, J. L. Harrington and W. T. Stafford were opposing candidates in the August primary for the Republican nomination for Judge of the 24th Judicial District, which is composed of Johnson and Martin counties. According to the official count, which is not challenged here, the vote was: Turner 1731, Preece 1671, Bailey 1411, Ward 1219, and Harrington 836—the vote as to Stafford, who was low man, not being shown in the record. Being dissatisfied with the result, and contending that there had been a violation of the Corrupt Practice Act. KRS 123.010 et seq., by Turner and the others, Bailey, Harrington and Preece each filed a contest suit. The contestees made their respective answers a counter-contest. The several actions were then consolidated for trial purposes and tried by the Honorable F. M. Burke, Special Judge; who, after the parties had completed their pleadings and proof, and after their various and sundry demurrers, motions, objections and exceptions

had been ruled upon, entered a judgment dismissing each and all of the pleadings which sought to disqualify the contestee Turner. From that judgment the contestant Bailey alone has appealed.

The contentions presented for our consideration are succinctly stated in appellant's brief:

"It is contended by the contestant that the Corrupt Practice Act has been violated in two particulars: (a) the contestee Turner furnished money to his son Douglas and others for the purpose of bribing voters; and (b) the voters were bribed in the Upper Ward in Paintsville in the presence of and with the actual knowledge of the contestee Turner."

After a careful consideration of the entire record, and a reading and re-reading of the evidence, we find that the appellant has offered only four witnesses whose testimony calls for a review in our consideration of appellant's two contentions. These witnesses are H. B. Adams, Beulah Davis, Joe Meade and R. C. Lyon.

Mr. Adams: This witness, who was a candidate for the Republican nomination for Sheriff of Johnson county, stated that he contributed $25 or $30 to Douglas Turner and Floyd Haney in the creation of a fund to be expended in the interest of a slate which would include him and the appellee Turner. He did not testify that he saw any tickets made out or any money paid by either Douglas Turner or Floyd Haney. On the contrary, he testified that he did not see any money paid by either of them.

Beulah Davis: In her original testimony in chief this witness testified that she saw the appellee hand a roll of money through a car window to his son Douglas; that this money was subsequently handed by the son to Floyd Haney, who later paid her $3. She did not testify that the appellee was present when she had her transaction with Haney, and when she was recalled for further cross-examination—which was some days following the giving of her testimony in chief—she testified, as shown by the record:

"Q9. Did you inform the contestant, J. F. Bailey and Mr. Harrington, of your physical condition that day before they took your deposition? A. Yes sir.

"Q10. Did you advise them that you were not in proper condition to give your deposition? A. Yes sir.

"Q11. Did they insist upon your giving that deposition that day? A. Yes sir.

"Q12. Mrs. Davis, are you personally acquainted with the contestee, Jas. W. Turner? A. Didn't know him that day and don't know him now, don't know whether he's in the room or not, don't know him. If he is in the room, I don't know it.

"Q13. On the day of the election, in the upper ward in Paintsville, Kentucky, do you know whether you ever saw Jas. W. Turner that day? A. I don't know him.

"Q14. Did you see him or any other person walking up to Douglas Turner sitting in a car and give him a roll of money that you stated that day to Judge Bailey? A. No.

"Q15. Did you see anything like that happen? A. No.

"Q16. Did Floyd Haney or Douglas Turner or anyone else give you any money that day? A. No sir.

"Q17. Did you vote that day? A. They said my ballot wasn't there and they said I would have to come back here and vote and I said if that is the way, I just won't.

"Q18. Do you recall now any of the questions that was asked you the day you gave your deposition down there at your home or any answers? A. Well, you mean Bailey had took,—no, I don't." It is clear that if one of her stories is true, the other is false. As to which is true and which is false is a sheer guess, and for this reason her testimony is without any value.

Mr. Meade: This witness, who is the father of Beulah Davis, testified that he likewise saw the appellee Turner hand money through a car window to his son Douglas, who later handed it to Floyd Haney. We find, however, that his reputation for truthfulness and veracity is unqualifiedly impeached by six witnesses, and sustained by none. See Phillips v. Langford, 250 Ky. 578, 63 S. W. 2d 782.

Mr. Lyon: This witness is the Cashier of the First National Bank of Paintsville, of which the appellee is Executive Vice-President. The substance of his testimony is that on and between July 31 and August 3 or 4 the appellee made three withdrawals of $1,000 each which he placed in his individual strong box in the bank, and that in addition to this the appellee cashed another depositor's check in the sum of $150.

The appellee categorically denied each of the material statements which had been made by the witnesses Meade and Davis, and testified affirmatively that he did not violate any of the provisions of the Corrupt Practice Act either directly or indirectly, and that no one, with his knowledge, consent or approval, expended money or other thing of value unlawfully in his behalf or for the purpose of influencing voters to vote for him. He admitted that he withdrew $3,150 between July 31 and August 4, as testified to by the witness Lyon. He further testified in this connection, however, that he later redeposited $2,000 of the identical money withdrawn, and in this statement he was substantially corroborated by Mr. Lyon. His testimony further shows that the remaining $1,150 was legitimately expended, and there is no evidence to the contrary. This evidence is not sufficient to do more than indicate an unexecuted intention to violate the Corrupt Practice Act, and that is not enough to deprive the appellee of his nomination. Damron v. Johnson, 192 Ky. 523, 233 S. W. 910.

The record does not indicate that any one of the six candidates is a neophyte in politics, or that either of them was lacking in a determination to win, and there is much in the record to warrant a surmise that most of them violated the Corrupt Practice Act. This, however, is not enough. The official count shows that the appellee is the choice of a plurality of the voters of the district, and something more than surmise is required to authorize the court to disregard their expressed preference.

Judgment affirmed.