# Burke v. Tackett.

October 6, 1950.

Nolan Carter, Special Judge.

Kenneth A. Howe for appellant.

V. R. Bentley and J. E. Childers for appellee.

STANLEY, COMMISSIONER—Affirming.

According to the returns of the November, 1949, election, Arnold Burke, Republican, was elected a magistrate of Pike County over Ballard Tackett, Democrat, by a majority of 95 votes. Tackett filed a contest upon the usual grounds, and Burke responded with a similar counter-contest. A large record was built up, most of which is incompetent and irrelevant. The trial court

decided that the successful candidate, Burke, had violated the Corrupt Practices Act, KRS 123.040, by buying the votes of Mrs. Nellie Johnson and Mrs. Etta Mullins, deeming that sufficient without regarding other evidence. He ruled also that the contestant was not entitled to the office because he had not received a majority and accordingly adjudged there was no election. This is in accord with settled law. Bogie v. Hill, 286 Ky. 732, 151 S.W.2d 765. Burke appeals.

The appellant insists the trial court misjudged the evidence for it does not prove him guilty of the charges. He relies upon a general rule in equity cases that this court will review the record and reach its conclusion independently of the trial court's decision on the facts; and the further proposition that elections should not be set aside lightly or without clear proof of a cause. The first rule does not go quite so far. We do examine the record in order to reach our independent conclusion but give great consideration to the decision of the trial court on a matter of fact. Such finding will never be disturbed where this court is in doubt. Salyer v. Gross, 253 Ky. 296, 69 S.W.2d 376. The second proposition is sound. We examine the evidence.

A. J. Stewart was a witness who seems to have wanted it to appear that he was like the proverbial monkeys who saw no evil, heard no evil, and spoke no evil—nor anything else. But through his evasions he finally admitted that at the polling place of Precinct No. 27 he changed a $50.00 bill for Burke. The witness stated he was engaged in hauling voters for either or both sides without pay and at his own expense. Burke concedes Stewart changed his $50.00 bill but denies improper use of the money. His explanation is that he had stopped at Liss Tackett's store and bought his lunch but had only a $50.00 bill, which Tackett could not change. He had told Tackett that he would stop by on his way back and pay him. It was in order to do this that he obtained the change from Stewart; but says that he forgot to pay Tackett until later. Mrs. Myrtle Miller testified that Minda Fleming had jumped on Burke, claiming that she had been promised $5.00 for voting in the primary, and Burke said he did not have anything but a $50.00 bill which he would try to get changed and pay her. He then went over to Jack

Stewart, and afterward the witness saw Burke and Minda talking together but did not see him hand over any money. Both Burke and Minda deny she was paid anything.

Tyson Mullins saw Burke talking to Mrs. Nellie Johnson and her mother, Mrs. Etta Mullins. When these women had come out of the polls, he saw Burke give Nellie some "greenbacks" but did not know the denominations. This was done in the presence of Virgil Speers, Marshall Johnson and Kearney Johnson. The women promptly left in Little's car. Mullins told a very straightforward story. Marshall Johnson and Speers fully corroborated Mullins, Speers adding that Nellie told him that she had got $6.00. Johnny Little, a fourteen year old boy, saw Burke showing the two women a sample ballot and how to vote for him. When they came out of the polls, they got in a truck, and he took them to his mother's home. Nellie said that Burke had given her some money to divide with Etta. Mrs. Little testified that Nellie gave Etta $3.00, which she paid to the witness for money borrowed.

The contestee, Burke, specifically denied giving either women money and contradicted the witnesses in less important particulars. He testified that Joe Keene, after talking to Nellie, came over to him and pointed to her, saying, "There is a vote for you." He did not know Mrs. Johnson or Mrs. Mullins but asked them if they would like to see a sample ballot. They replied that they would, and he obtained one and showed them how to vote either the Republican or the Democratic ticket, straight or scratch. He did not explain to them how they might vote for him. He saw Mrs. Johnson go into the building but does not remember seeing Mrs. Mullins do so. About this time Marshall Johnson and Kearney Johnson, who were drinking, raised a row with him and he left.

Mrs. Nellie Johnson's testimony is stated in substance. Her mother, Mrs. Mullins, asked Burke for a sample ballot, he pulled one out of his pocket and gave it to her but did not explain to either of the women how to vote. Her mother had already voted, but she then went in and voted. As she came out, she walked with Burke "a little way from the porch," designated as fifty or sixty feet. Burke did not give her or her

mother any money or promise either of them anything. They went from the voting place with the Little boy to his parents' home, but she denied his testimony. She had $6.00 which her husband had given to her and some change. She gave her mother the $6.00 with which to pay Mrs. Little and a debt which the witness owed to Hatler Fleming. She testified that after she came out from voting, Tyson Mullins asked how she had voted, and she replied, "Straight Republican." He asked, "What for?" and she replied, "Three dollars" and laughed. She was only joking for she had received no money at all. The reputation of this witness for truth and veracity and general morality was shown to be bad, and her own cross-examination developed a weakness of character.

Mrs. Etta Mullins testified that she had asked Burke for a "blank ballot" and he gave her one. She added, "I looked at it and then Nellie and I went in to vote." Burke did not ask either woman to vote for him but did say he would appreciate it. Nobody gave the witness any money to vote. She asked Nellie for $6.00 to pay off a debt and Nellie said, "I will let you have $3.00 because I have to have some cigarettes." She gave her only $3.00.

Jack Johnson, Nellie's husband, was close by when Burke was talking to them. He did not give either of them any money, but showed his mother-in-law how to vote. Johnson had given his wife some money but doesn't state how much.

The contestee's witnesses, Mullins, Speers, and Kearney Johnson were impeached by evidence of bad reputations.

Like the trial court, we do not find it necessary to examine the record as it relates to the other charges, particularly, that pressed by the appellee, that the contestant had made certain promises which, the appellee contends, bring him within the terms of the statute. The Corrupt Practices Act, passed to conform with the condemnation of Sections 150 and 151, Kentucky Constitution, declares that if it appears a candidate violated or knew of the violation of the law by others in his behalf, his election shall be declared void. KRS 122.010. If the purchase of even one vote by or with the knowledge of a candidate is proven, he

must be deprived of the fruits of his victory. Scott v. Roberts, 265 Ky. 375, 96 S.W.2d 1046; Ward v. Salyer, 283 Ky. 294, 140 S.W.2d 1016.

We have frequently spoken of the difficulty of properly appraising evidence presented in an election contest because of the low position in society of persons who will sell their vote and the great self-interest of the party charged. The best that can be done in the appraisal is to look at the "lights and shadows," the credible and incredible character of the items of testimony, and bring to bear the circumstances and reasonable inferences according to our experience in weighing and evaluating evidence. Ward v. Salyer, supra, 283 Ky. 294, 140 S.W.2d 1016. These things are intangible, so the reasoning is not always easily written. It is so here. Outstanding are the various contradictions or the lack of similarity in the details related by the witnesses who controvert the positive evidence of guilt of the contestee of the particular charges. Their testimoney cannot be regarded as fully reliable. It is clouded with uncertainty and improbability. Exceptions were filed to some of the testimony related as incompetent, but they were waived by failure to have the court pass upon them. Black v. Noel's Adm'x, 240 Ky. 209, 41 S.W.2d 1100. It is the general rule that although it would have been excluded otherwise, relevant evidence received without objection may properly be considered, given the force and effect of proper evidence and accorded its natural probative effect: City of Somerset v. Gardiner, 228 Ky. 512, 15 S.W.2d 303; Ringo v. McFarland, 232 Ky. 622, 24 S.W.2d 265; 20 Am.Jur., Evidence, Sec. 1185.

We conclude that the finding of the trial court is correct and that the judgment should be and it is

Affirmed.