## BORDERS v. COLLINGSWORTH.

Court of Appeals of Kentucky.
Sept. 26, 1952.

Joe Hobson, Prestonsburg, W. A. Johnson, Paintsville, for appellant.

Williams & Allen, Jackson, for appellee.

CULLEN, Commissioner.

This is an election contest case, involving an election for an unexpired term of the office of county judge in Magoffin County. The appellee G. W. Collingsworth, Republican candidate, was declared elected, and the appellant Patton Borders, Democratic candidate, contested the election on the grounds (1) that Collingsworth was not properly a candidate for the unexpired term; (2) in a number of precincts the ballots erroneously indicated that the election was for a full term; and (3) Collingsworth had violated the Corrupt Practices Act. The circuit court upheld the election of Collingsworth, and Patton appeals.

An unexpired term in the office of county judge of Magoffin County existed by reason of the death, in June 1951, of the judge who had been elected in 1949. His death occurred less than 70 days before the 1951 primary election, and therefore nominations for the unexpired term were required to be made by the governing authorities of the political parties in the county. KRS 119.-030. Borders was nominated by the Democratic Executive Committee, and Collingsworth was purported to be nominated by the Republican Executive Committee.

Borders maintains that Collingsworth's nomination was a nullity, and that Collingsworth was not legally a candidate for the unexpired term, because the certificate of nomination by the Republican Executive Committee purported to nominate Collingsworth for the "short term" rather than for the "unexpired term". Borders contends that "short term" meant the period between the death of the former judge and the November election in 1951, and he seeks to support this contention by pointing out that the Republican nomination was made three days before the Governor made an appointment to fill the vacancy for that period.

■ It is obvious to us, and should have been obvious to anyone who examined the Republican certificate of nomination, that the nomination was for that portion of the term remaining after the November election in 1951, because the last sentence of the certificate directed the county clerk to place Collingsworth's name "on the ballot, on the Republican ticket, to be voted for at the November Election, November 6, 1951." We can attach no importance to the use of the words "short term" instead of "unexpired term," and there is no reason for anyone to have been confused or misled by the use of those words. It is our opinion that Collingsworth was validly nominated for the unexpired term.

In 10 precincts out of the 27 precincts in the county, the names of Borders and Collingsworth appeared on the ballots, in the respective party columns, under the simple designation "For County Judge," with no indication that the election was for an unexpired term only. (In the other precincts,

pursuant to an order Borders had obtained from the circuit court, Borders appeared as a candidate "For County Judge—Unexpired Term" and Collingsworth appeared as a candidate "For County Judge—Short Term".)

Borders argues that the ballots in the 10 precincts violated the requirement of KRS 119.030 that "candidates for full terms shall be grouped together, and candidates for unexpired terms shall be grouped together, under appropriate headings, so that the voter may easily distinguish the candidates for full terms from the candidates for unexpired terms." As the number of votes cast in these 10 precincts comprised more than 34% of the total votes cast in the election, it is Borders' contention that the entire election should be held void.

■ We think that the above quoted provision of KRS 119.030 was intended to apply only in the situation where there are candidates at an election for a full term and for an unexpired term *in the same office*. Since our decision in Hester v. Robbins, 292 Ky. 12, 165 S.W.2d 817, this situation will not arise except in the case of the office of United States Senator. Of course it is preferable, when only an unexpired term is involved, that the ballots indicate that fact; but failure of the ballots so to indicate should not invalidate the election where there is no reason for the voters to have been misled thereby.

On the ballots at the election here in question, the names of the candidates for county judge appeared at the bottom of the party columns, below the names of the candidates for state offices, circuit judge, commonwealth's attorney and circuit clerk. No other county offices were to be voted for. There was no occasion for the voters to have been confused, and certainly nothing to impede the voters in making a fair choice between the two candidates.

Davidson v. White, 307 Ky. 269, 210 S.W.2d 943, which is relied upon by the appellant, does not furnish support for his contentions. In that case, the name of an Independent candidate for an unexpired term of the office of sheriff was placed at the top of the Independent column, oppo-

site the names of the candidates for Governor in the party columns, while the name of the only other candidate for the sheriff's office (a Republican) was listed at the bottom of the Republican column. In addition, the Republican candidate was shown as a candidate "For Sheriff," while the Independent candidate was shown as a candidate for the unexpired term. The election was held void because the ballots obviously were confusing to the voters.

█ It is our opinion that the form of the ballots in the 10 precincts in Magoffin County sufficiently complied with the statutes.

Collingsworth was charged with having violated the Corrupt Practices Act, KRS 123.010 et seq., in that he failed to report part of his pre-election expenses in his pre-election expense statement, and in that votes were purchased by him or by others on his behalf and with his knowledge.

As concerns the expenses, the evidence was that Collingsworth and the Republican candidate for circuit clerk, together, rented a jeep for use in their campaigns. Three or four trips were taken in the jeep, by Collingsworth, prior to the fifteenth day preceding the election, on which day he filed his pre-election expense statement. He did not list any gasoline expense in his pre-election statement, but he did list the sum of $25 for jeep hire and for gasoline in his post-election statement, which was filed 28 days after the election. The contention is that the gasoline for the trips preceding the filing of the pre-election statement should have been included in that statement.

Collingsworth testified that he charged some of the gasoline he purchased for use in the jeep, and he was not sure whether the gasoline for the first few trips was charged or whether he paid cash. In view of the fact that the gasoline may not have been paid for by Collingsworth until after the pre-election statement was filed, that he purported to report all of the jeep expense in his post-election statement, and that his share of the gasoline used for the first few trips was obviously an insignificant amount, we cannot say that the

chancellor erred in finding that there was no violation of the Corrupt Practices Act in respect to reporting the gasoline expenses.

The evidence as to vote buying was as follows:

1. A witness named Mills testified that several times on the day of election, in the Cow Creek precinct, he saw Collingsworth hand money to a man named Reed. He saw Reed talking to voters throughout the day, but did not see Reed pay money to anyone. Collingsworth denied that he gave any money to Reed. Two witnesses testified that Mills' reputation for truth and veracity was bad, and it was proved that Mills had been adjudged insane in 1932 and had never been restored.

2. Borders' brother testified that on the evening of election day, while the votes were being counted, Collingsworth displayed several bundles of money, said "That's not all I've got," and further said that he had "not run a pauper's race."

3. It was established that Collingsworth (or his brother) borrowed $912 from a bank a week before the election, and that he had most of the money on his person on the election day. However, it was proved that Collingsworth repaid $850 to the bank shortly following the election day.

4. Borders' brother testified that he saw a man named Adams give money to one of the Republican challengers, named Salyers, at the Flat Fork precinct, on the day of election, and that Salyers later said that he was buying votes for the straight Republican ticket. There was no evidence relating Collingsworth with Adams and Salyers other than Collingsworth's testimony that he had talked with Adams and Salyers at informal meetings of Republican adherents on one or two occasions preceding the election.

█ In view of Collingsworth's denial that he gave any money to Reed, and in view of the evidence impeaching Mills' veracity, the chancellor was entitled to disbelieve Mills' testimony. The evidence that Collingsworth had a substantial sum of money with him, on the day of election, is not sufficient to establish a violation of

the Corrupt Practices Act. Bailey v. Turner, 300 Ky. 664, 190 S.W.2d 24. Collingsworth's statement that he had "not run a pauper's race" did not necessarily mean that he had purchased votes or made other illegal expenditures. The evidence did not establish that the activities of Adams and Salyers were being conducted with the knowledge or by the procurement of Collingsworth. Asher v. Broughton, 231 Ky. 165, 21 S.W.2d 260; Murrey v. Kirkman, 231 Ky. 191, 21 S.W.2d 240.

 The findings of the chancellor on disputed questions of fact in this type of case are entitled to great weight. Burke v. Tackett, 313 Ky. 583, 233 S.W.2d 115. We are not convinced that the chancellor erred.

The judgment is affirmed.

COMBS, J., not sitting.