James Lee INGRAM, Appellant,

v.

Betty F. GALLIHER et al., Appellees.

James Lee INGRAM, Appellant,

v.

MARYLAND CASUALTY COMPANY,
Appellee.

Court of Appeals of Kentucky.

Jan. 31, 1958.

R. W. Keenon, Stoll, Keenon & Park, C. W. Swinford, Lexington, Thomas R. Burns, Morehead, for appellant.

Clay & Rosenbaum, Lexington, for appellee.

STANLEY, Commissioner.

This is an automobile collision case. The appellees, Mrs. Betty Galliher and Miss Kathleen Hackworth, joined in one action for damages against the appellant, James Lee Ingram, as is authorized by CR 20.01. The Maryland Casualty Company intervened and claimed the right of subrogation in the sum of $798.50, which it had paid Mrs. Galliher as insurer of her automobile against damage. At the conclusion of all the evidence the court directed verdicts for the plaintiffs and submitted to the jury only issues of damages sustained. The jury first returned verdicts for Mrs. Galliher for $6,500 and for Miss Hackworth, $2,500. The plaintiffs and the defendant moved that the jury be required to set out how much was awarded the Casualty Company on its claim, and the defendant moved that the jury be required to itemize the verdicts. The jury retired and returned a verdict in such form that the court did not receive it, but in the presence of the jury the judge prepared a verdict and the jury again retired to consider it. An itemized verdict was then returned awarding Mrs. Galliher $500 for damage to her automobile in addition to $752 awarded to the Casualty Company; lost time from work, $500; hotel and transportation expenses, $325; pain and suffering, $1,900; and for permanent impairment of earning power, $3,275. The jury added, "So that we find for the Maryland Casualty Company $752 and for the said Betty F. Galliher a total of $6,500." It awarded Miss Hackworth $1,000 for pain and suffering, $50 for lost time from work, and $1,450 for permanent injury, making a total of $2,500. Judgments were entered accordingly.

It will be observed that the sum of the itemized verdicts was the same as first returned for the plaintiffs but with the addition of an award to the Casualty Company. The appellant complains that the verdict was that of the Judge and not of the jury. The unaccepted, itemized verdict is not reproduced in the record, but apparently it included the separate award to the Casualty Company. It appears that all the court did was to submit a more intelligible form and it was accepted by the jury in their room. The action of the court was proper. Craig v. Taylor, 10 B.Mon. 53, 49 Ky. 53; Louisville & N. R. Co. v. Muncey, 229 Ky. 538, 17 S.W.2d 422, 423. The court having directed the jury to return a verdict in some amount for the Casualty Company and it having not done so at first, the court properly required that the verdict be corrected to conform to the instructions. Tinsley's Adm'r v. Slate, Ky., 251 S.W.2d 883.

Common to all the cases is the question of the propriety of directing a verdict for the plaintiffs.

The accident happened on U. S. Highway No. 60 about eight miles east of Morehead in the late afternoon of December 10, 1955. Mrs. Galliher was driving west from Ashland to Lexington and Miss Hackworth was her guest. They both testified clearly that they saw Ingram's car approaching about 3/10 of a mile away on his wrong side of the road. Mrs. Galliher assumed he intended to turn off the road to his left where there were some residences and a store; but when she saw that he was not going to do so,

she quickly swung her car to her left and attempted to avoid the collision. The right corners of the two cars collided on Ingram's wrong side of the highway. The sheriff and a state policeman came upon the scene very soon after the accident. They described the conditions and testified that the tire marks of the defendant's car were on his left side of the highway for 100 to 150 feet and came to an end about one foot from the shoulder of the road. He told the officers that "he just didn't know what caused the accident." Ingram had the odor of whiskey on his breath. He was arrested for reckless driving and pleaded guilty of the charge in a magistrate's court several days later.

The defendant was a soldier and was on his way from Ft. Knox to his home in Huntington, W. Va. He first testified that he saw the plaintiffs' car coming with one-half of its width on the wrong side of the center of the road while he was driving on his right side. He had swung his car to his left trying to avoid the collision, which occurred, said he, while the plaintiffs' car was in the process of turning to his right-hand side. However, at the close of his testimony he was asked and answered these questions: "Q. Was there enough room at all times to have gotten by Mrs. Galliher? A. Yes, if I had seen her. Q. What kept you from seeing it? A. I was fooling with my car. It had started to miss. I was fooling with the dash. I thought the switch was loose."

■■ Where a witness on cross-examination gives clear and unequivocal testimony that is inconsistent and contradictory of what he testified to on direct examination the force of the first statement may be destroyed. Duvall v. Commonwealth, 198 Ky. 609, 249 S.W. 768; Williams v. United Mine Workers of America, 298 Ky. 117, 182 S.W.2d 237; Bailey v. Turner, 300 Ky. 664, 190 S.W.2d 24. Therefore, the defendant's last testimony corroborates the evidence of the plaintiffs as to how the accident occurred, and the court properly ruled as a matter of law that his negligence was the cause of the accident.

There was evidence sufficient to prove the damage to Mrs. Galliher's automobile to have been within the verdicts of $752 for the Casualty Company and $500 additional for her. It was a 1955 Packard car, which the plaintiff had owned six weeks and had driven 5,000 miles. While she had traded in a Cadillac for this car, she stated definitely that it had cost her $4,380 and that she had spent $802 for repairs, but the car rattles and is regarded as "a wrecked car." A Packard automobile dealer in Morehead saw the car after the wreck, and, upon a hypothetical question, he fixed its value before the accident at $3,675 and estimated its value after the collision to be $1,850, thereby arriving at a difference in value of $1,825. We regard the verdict on this item of recovery to be justified.

The appellant makes no complaint as to damages for lost time of $500, or for temporary injuries, that is, for pain and suffering, $1,900. While the evidence concerning the hotel and transportation expenses incurred by Mrs. Galliher in returning to Lexington for surgical treatment is indefinite and some of the items are extraordinarily large, we conclude that the defendant was not prejudiced by the submission of the issue nor by the amount awarded by the jury on this account.

The appellant contends there was no evidence of permanent injury of either of the plaintiffs and that the allowance of hotel and travel expenses incurred by Mrs. Galliher should not have been allowed.

■ Miss Hackworth described her injuries as severe multiple bruises and the consequences thereof. Her work as a typist and user of other keyboard business machines had been seriously interfered with. At the time of the trial, three months after the accident, she was wearing a shoulder brace, suffering great pain and was very nervous. Upon her return home in Ashland from Lexington she was treated by

Dr. Culley, but he had gone to Florida and was unavailable as a witness. Three or four weeks before the trial she was examined by Dr. Gwinn of Ashland at the suggestion of her attorney right after she had been examined by Dr. Miller of Lexington at the instance of the defendant. Dr. Gwinn testified that the plaintiff was suffering from bursitis and traumatic arthritis in the right shoulder joint. He stated, "Anyone who had been in an accident and had damage to the joints stands a good chance of being bothered with traumatic arthritis." While agreeing with his cross-examiner that arthritis may "come from many other things," the doctor affirmed his opinion that the plaintiff's condition was caused by trauma. In answer to a question on direct examination as to whether he considered the condition to be permanent, the witness answered, "I do, judging from past clinical experience with arthritis. That is the way you find most of them." Dr. Miller described Miss Hackworth's condition at the time he examined her. He stated that he thought her condition to be temporary and that it is "very unlikely that any permanent injury had been sustained." We think the evidence warranted the submission of the issue of permanent injury of this plaintiff.

The severity of the injuries sustained by Mrs. Galliher is questioned, particularly as to the permanency. She was employed as a district supervisor of eighty sales ladies of cosmetics in several counties, and her work continues to require considerable travel. She returned to work seven weeks after the accident, and had continued at work, which required traveling around 200 miles a day, but suffered from headache and fatigue in the afternoon. It is not shown her earnings have decreased. At the time of the trial she was suffering as the result of the injuries she received in the accident. It appears that Mrs. Galliher had been treated by Drs. Welch, Choate, and Yocum in Lexington, and by Dr. Scott, a chiropractor, in Huntington, W. Va. But none of these doctors testified. The professional evidence on permanency was given by Dr. O. B. Murphy, an orthopedic surgeon of Lexington. He first saw Mrs. Galliher twelve days after the accident and had seen her on four later occasions, including the day of the trial. He was of opinion that she had had a "whiplash" injury, which he defined as being the result of "a sudden stopping of a forward motion, most commonly in a vehicle, in which the head was suddenly bent forward on the body at the neck in the manner of a whiplash." The doctor minutely described the patient's condition. He had prescribed a neck collar, which she was still wearing. He was asked, "In your professional opinion, are you able to state, based on a reasonable degree of professional certainty, when Mrs. Galliher may expect a complete recovery, if ever?," and answered, "I don't believe I can utter a true positive statement, but within the realm of my estimation, I think she should recover symptomatically; as to whether or not further X-rays will show or demonstrate any change in this finding we have discovered, I couldn't utter any statement on that, I don't believe. That will have to be determined by further evaluation and examination."

Dr. Miller examined Mrs. Galliher at the instance of the defendant just before the trial. His testimony is that the "objective findings were essentially normal" and a definite opinion that the injuries were not permanent. Upon this evidence of the two doctors the jury returned a verdict for $3,275 for permanent injuries.

 On the question of permanency, the nature and extent of the plaintiff's injuries will, of course, be taken into consideration. Some injuries, such as the loss or injury of a member of the body, need little or no professional opinion to prove their permanency; but where the injuries are internal great reliance must be had upon that character of evidence. It is an established rule that to warrant a recovery for permanent injuries, the future effect of the injuries sustained must be shown with reasonable certainty. The evidence must be

positive and satisfactory, although it need not conclusively show the condition to be permanent. So, a mere conjecture or even probability of lasting disability does not warrant recovery for permanent impairment of earning power. We have many cases to this effect. In some of them the professional evidence was equally as indefinite as is that of Dr. Murphy. It was held to be insufficient to prove permanent injury. See Augustus v. Goodrum, 224 Ky. 558, 6 S.W.2d 703; H. & S. Theatres Co. v. Hampton, 300 Ky. 677, 190 S.W.2d 39; Sedlock v. Trosper, 307 Ky. 369, 211 S.W.2d 147, 13 A.L.R.2d 349. We are of opinion, therefore, that the evidence did not authorize the instruction on permanent injury, consequently, the verdict is improper to that extent.

Since we have expressed the opinion that the judgment as to automobile damages and hotel and travel expenses was proper, there is left only the question of whether the court erred in refusing to sustain the motion for a judgment notwithstanding the verdict as to the recovery for permanent injuries.

Civil Rule 50.02, relating to a motion for judgment notwithstanding the verdict, provides that whenever a motion for a directed verdict has been denied and a verdict has been returned, the trial court may "either order a new trial or direct the entry of judgment as if the requested verdict had been directed." We think the trial court should have sustained the defendant's motion to the extent that it embraced the award of damages for permanent injury for the reasons above stated. The construction of this rule has been that where the Court of Appeals concludes that the judgment must be reversed, it may in its discretion direct the entry of a new judgment without remanding the case for a retrial. Clay, CR 50.02, Comment 5; Coca Cola Bottling Works v. Bingham, Ky., 277 S.W.2d 468; Louisville & N. R. Co. v. Taylor, Ky., 290 S.W.2d 608. This has been done by directing a pro tanto reduction in the judgment to the extent of the amount of any item the plaintiff did not prove a right to recover. Citizens' Telephone Co. v. Anderson, Ky., 291 S.W.2d 527; Marlowe Construction Co. v. Jacobs, Ky., 302 S.W.2d 612. Since the award of $3,275 for permanent injuries was not sustained by the evidence, the court concludes that the judgment should be reversed as to that item with direction to the trial court to re-enter a judgment eliminating such award, in accordance with this opinion. Other than the item of permanent injury to Mrs. Galliher, her judgment is affirmed.

Judgments affirmed in part and reversed in part.