## Whitehead v. Stith.

June 2, 1939.

Eugene Hubbard, Judge.

Finley F. Gibson, Jr., for appellant.

Woodward, Dawson & Hobson and J. Paul Keith, Jr., for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On December 18, 1934, the automobile of the appellant and defendant below, Fred A. Whitehead, collided on Fourth Street in the city of Louisville, Kentucky, with the appellee and plaintiff below, Samuel Covington Stith, a child then five years of age, whereby plaintiff was severely injured, to recover damages for which this action was filed in the Jefferson circuit court by him through his next friend against defendant, seeking judgment against the latter for the sum of $15,800. The trial of the case resulted in a verdict for plaintiff for the sum of $3,000; but upon appeal to this court the judgment was reversed solely and only on the ground that plaintiff at that trial—because of his youth—did not manifest on his voir dire examination sufficient competency to give testimony. Our opinion, reported in 268 Ky. 703, 105 S. W. (2d) 834, also directed certain corrections in the instructions given by the court to the jury on that hearing, and which were followed at the second trial of the case at which the jury returned a ver-

dict in favor of plaintiff for the sum of $5,800. Defendant's motion and grounds for a new trial were overruled and judgment was pronounced on the verdict, to reverse which he prosecutes this appeal.

In the motion for a new trial counsel for defendant incorporated six enumerated grounds as reversible errors, and likewise presents and argues in his brief the same number of points for a reversal of the judgment, but which do not completely coincide with those set out in the motion for a new trial. Two of such departures are that ground (5) in the motion for a new trial complains of alleged improper conduct on the part of plaintiff during the trial, which consisted in him walking up to the defendant in front of the jury and saying within its hearing: "There was no streetcar there." That ground is not argued in brief at all, or referred to therein. Also the motion and grounds for a new trial nowhere complains of improper rejection of testimony offered by defendant; whilst in the brief one of the arguments is directed to that point; but it not being relied on in the motion for a new trial eliminates it from our consideration. The first departure, although argued in brief, we do not consider—even if it did occur—as having any material effect upon the verdict, since the statement of the infant plaintiff was but repeating his testimony which he had given while occupying the witness chair, and the fact that the repetition was made in front of the jury—and in departure from the usual form of receiving testimony—could not, as we conceive it, have any bearing upon the case. Eliminating that point from the discussion of the questions presented we will proceed to a determination of them as classified in brief.

The first one complains of the incompetency of plaintiff as a witness, which was the only ground upon which we reversed the former judgment. In disposing of it but little need be said, since the qualifying examination made at the instant trial clearly demonstrated the mental as well as moral competency of the witness to give testimony. Our former opinion cited many cases from this court dealing with the question and pointed out that there was no specific age measuring the commencement of competency of infant witnesses, but that each case must be determined upon the developed advancement and mental comprehensiveness of the offered witness at the time the testimony is proposed to be given. Among the cases so referred to are White v.

Commonwealth, 96 Ky. 180, 28 S. W. 340, 16 Ky. Law Rep. 421; Leahman v. Broughton, 196 Ky. 146, 244 S. W. 403, and Meade v. Commonwealth, 214 Ky. 88, 282 S. W. 781. Such qualifying examination made in this case prior to the introduction of the infant plaintiff completely demonstrated his qualification to testify, as measured by the rule laid down in those cases, and by our former opinion in this case. The correctness thereof was also demonstrated by the character of testimony given by the youthful witness, who was eight years of age at the second trial. We therefore, conclude that this ground is without merit.

The second point argued in brief is, misconduct of three jurors on their voir dire examination whereby they failed to disclose prior litigation in which they were parties—either plaintiff or defendant—upon an inquiry by the court addressed to the tentative panel of eighteen, and to which question the jurors remained silent, when the facts were (as later developed on the hearing of the motion for a new trial) that they or some of them were parties to prior litigation in some of the courts of Jefferson County. However, the question propounded by the court on such examination was limited to tort actions for the recovery of damages and upon the hearing of the motion for a new trial the questioned jurors were introduced and it was developed that some, or perhaps, all three of them had been parties to prior litigation in Jefferson county in either its circuit court or some of the inferior courts therein but all of them occurred at a remote period from the date of the trial of this case when the inquiry was made of them by the court.

One of the jurors at such remote period was sued in an inferior court upon a small store account in which his wages were garnisheed but the case was settled without litigation. Another one had sustained an injury as an employee while he and his employer were operating under our compensation act, and he had appeared before the board and obtained an award. Another one had borrowed money from a building and loan association and mortgaged to it his home and he was later made a party in a foreclosure proceeding filed by his creditor. Manifestly, the court's inquiry was not intended to divulge for any purpose any such character of litigation, since it could not possibly have any bearing upon the qualification of a juror in determining issues presented in a case

of this character. However, one juror stated that some fifteen years ago there was an action filed against the Kentucky Jockey Club wherein he appeared as plaintiff and in which the petition sought the recovery of $10,000 against the defendant therein for false arrest, or, possibly, for assault and battery by one of the servants of the defendant therein. The facts, however, with reference to it—as explained by the witness—were, that for some reason a servant of the Jockey Club had attempted to eject the juror from the grounds of defendant therein and had inflicted upon him some slight bodily injuries and had destroyed or injured his new suit of clothes.

The juror consulted an attorney with reference thereto, but did not direct the immediate filing of an action. However, the attorney proceeded to prepare and file a petition, as indicated, without the juror's knowledge and later it was dismissed upon the defendant (Jockey Club) purchasing for the plaintiff in the unauthorized filed action a new suit of clothes for which it paid $65. The juror thus circumstanced stated upon the hearing of the motion for a new trial that he did not regard that as a litigation authorized by him, even if he had remembered it, but that he had entirely forgotten it and that the fact of its having been filed had no influence whatever on his verdict in this case.

The other jurors gave similar testimony, and furthermore said that they did not understand the question propounded, on their voir dire examination to embrace any litigation, except the character and kind they were called upon to try. Cases are cited in brief in support of this ground, when it clearly appeared that the juror was purposely concealing the facts inquired about—and the character of case might have some influence upon him as a juror in determining the case in which he was summoned to act as such. But we do not conclude under the facts herein presented that the rule contended for should apply.

It is next argued that the court erred in making a remark in the presence of the jury with reference to certain testimony given by a witness (W. D. Smothers) for defendant. He was a motorman for the Louisville Railway Company, serving in that capacity at the time of the accident in operating a streetcar on Fourth Street, which passed over the point where the accident complained of occurred. It was between sixty and sev-

enty feet north of the junction of Oak and Fourth Streets, the defendant traveling north on the latter. He contended that there was a streetcar on the southbound track located on the west side of Fourth Street, which he was passing at the time, and plaintiff suddenly ran from behind it and collided with his automobile with such suddenness as that he could not prevent it with the means at hand, and for the consequences of which he was not liable. The witness, Smothers, after stating his occupation, said that streetcars passed over that track every four minutes and that he was due at the point of accident with his car at seven minutes past three o'clock p. m.; but he did not testify that he was there at that time, stating only what was then the scheduled time for him to be at that point. The evidence in the case established the fact that the accident occurred, as stipulated, "a little after three." After Smothers had given his testimony, as indicated, plaintiff's attorney moved to exclude it, but the court overruled the motion, but in doing so said: "I do not think it is worth very much." In view of the circumstances as we have outlined them we cannot escape the conclusion that the court properly appraised the value of the witness' testimony. It will be remembered that the principle fact sought to be established thereby was, that a streetcar *was* standing at the point insisted upon by defendant *at the time* of the accident. The testimony of the witness bore very remotely on that issue and there was considerable testimony by eye-witnesses pro and con upon the fact. In the circumstances we are not inclined to give to the alleged error reversible effect.

The next point argued in brief for a reversal relates to an incident occurring during the trial. A controversy arose over the competency of a question that plaintiff's counsel desired to ask defendant while he was on the stand. Counsel and the court withdrew to the judge's room out of the presence of the jury to determine the question. They were gone about ten minutes and upon the return there was an envelope lying on the table of counsel for defendant in the upper left hand corner of which was the printed address of an insurance company. Inquiry failed to develop how it came to be there or who put it there. Counsel for both sides appear to have had some correspondence with that insurance company, and, perhaps, both of them had among their private papers some envelope similar to the

one found on the table, but however that may be, counsel for defendant moved that the jury be discharged and the case continued upon the ground that it was a remote possibility that because of the incident its members or some of them became acquainted with the fact that defendant carried indemnity insurance. Upon the hearing of the motion for a new trial each and everyone of the jurors was called and they all testified that they never saw any such envelope (the one found on the table being exhibited to them) and that they never heard of the fact that the defendant carried indemnity insurance. Attorney for plaintiff testified (Hon. Ernest Woodward) at that hearing that he had nothing whatever to do with placing the envelope at the place where it was discovered, nor was it shown that anyone connected with the case had anything whatever to do with it. In the circumstances it appears to us that it would be little short of folly to set aside the verdict on any such ground, since all of the proof established beyond controversy that the supposed poisonous fact was never communicated to the jury through any such channel, and for which reason this ground is also overruled.

The next argued point complains of incompetent evidence admitted by plaintiff over the objections of defendant. It consisted solely in the fact that a witness who saw the accident about 100 feet from where it happened—and who immediately went to the scene—testified that he saw fresh sliding tracks on the pavement extending back for about 21 feet from defendant's car after it stopped, following the accident. The same fact was testified to by another witness, or witnesses. Nevertheless counsel for defendant insists upon the incompetency of the testimony because the skidding might have been made by some other motor vehicle than the one defendant was operating. He cites some cases supporting his argument, but in each of them a period of time intervened between the accident and the discoveries testified to by the witness within which other traveling automobiles over the same spot might have produced what the witness testified to. However, no intervening period prevailed in this case, and in view of the fact that other testimony—given by a number of witnesses— was to the effect that defendant at the time applied all four of his brakes, so as to produce a screeching noise which they all heard immediately following the blow of the horn emanating from the same automobile, we can-

not bring ourselves to the conclusion that the criticized testimony was incompetent.

The next ground argued is one not contained in the motion for a new trial, and which is the improper rejection of testimony offered by defendant. There was a large map used in the trial plainly indicating the geography of the situation where the accident occurred, as well as streetcar tracks and buildings on either side of the street. Likewise, there was introduced photographs, and the situation was thereby made practically as plain as could be done if the trial was being held on the spot. Defendant offered miniature pasteboard figures representing a street car and an automobile which he sought to place upon the map in the positions contended for by him so as, as counsel contends, the jurors might more completely understand the situation. The court denied him the right to do so, and which forms the ground for this argument. Even if we should concede that it would have been proper to allow the use of the figures as proposed, and to permit a demonstration with them before the jury, we would still be unable to see in the circumstances how the ruling of the court could have possibly prejudiced the rights of defendant when all of the other testimony completely enlightened the jury as to the contentions of every party to the litigation.

The next and last point argued in brief is that the court erred in overruling defendant's motion for a peremptory instruction in his favor. As we have hereinbefore said, defendant contended that he was passing a streetcar at the time, and that the infant plaintiff suddenly ran from behind it and struck the left front fender of his automobile; while it was the contention of plaintiff that no streetcar, nor any other obstruction, was present and that there was nothing to prevent defendant from seeing the infant plaintiff at the time he left the sidewalk on the west or opposite side of Fourth Street to cross it in front of his approaching automobile, and that if he had been alert in the exercise of the requisite care—by maintaining the proper lookout—he could have easily stopped his car before colliding with the infant plaintiff and thereby prevented the accident. At least two other witnesses besides the plaintiff testified that no such obstruction existed at the time although three witnesses corroborated defendant to the effect that a streetcar was on the south bound railway track

and that plaintiff passed behind it in crossing Fourth Street immediately before the accident. However, the testimony of some of those witnesses—other than the defendant himself—is somewhat weakened because of their location, which prevented them from seeing what happened at the time of the immediate collision, since the obstruction to which they testified would have prevented them from doing so. It will thus be seen that a potent, if not the decisive, issue in the case was whether or not the street car or other obstruction contended for by defendant was or not present and that the infant plaintiff ran behind it and collided with his automobile before the collision could be prevented.

The rate of speed at which defendant was traveling, according to his own testimony was between twelve and fifteen miles per hour. All four of his wheels were equipped with brakes and the street was dry, thereby affording opportunity for a very quick and short stop. If the way was open for him to see and discover the approach of the infant plaintiff it was his duty to have done so and to have acted accordingly. The jury accepted the view contended for by plaintiff, and we are by no means prepared to say that its verdict was not supported by the evidence, or was contrary to it—much less that it was flagrantly against it, or that defendant was entitled to a peremptory instruction.

Although it was complained in the motion for a new trial that the instructions were improper, that ground is not argued in briefs, and under our rule it will be considered as abandoned. If, however, it were otherwise, then our former opinion deprives defendant of that ground, since the same instructions, with our indicated alterations on the former appeal, were given at the second trial—thereby bringing them (the evidence being practically the same) under the protection of the doctrine of the "law of the case" rule. The size of the verdict is not complained of, nor could it well be in view of the testimony with reference to the extent of plaintiff's injuries, and the pain and suffering which he underwent.

Perceiving no error authorizing a reversal of the judgment, it is affirmed.