## LOUISVILLE TAXICAB & TRANSFER CO. et al.

### v.

### LANGLEY.

Court of Appeals of Kentucky.

March 12, 1954.

Robert L. Page, Louisville, for appellants.

William G. Lehnig, Mahan, Davis & Mahan, Louisville, for appellee.

DUNCAN, Justice.

The appellee, Edith Langley, instituted this action against appellants, Louisville Taxicab & Transfer Company, its driver, Paul P. Kelsay, and one William Thompson, to recover damages for injuries sustained while riding in a cab owned and operated by appellant company. Thompson made no defense, and a judgment pro confesso was rendered against him. A trial was held at which the jury assessed damages against all three defendants in the sum of $3,758.50, and judgment was entered accordingly. Louisville Taxicab & Transfer Company and its driver, the only parties appellant, insist that the judgment should be reversed upon one or more of the following grounds: (1) refusal of the court to instruct the jury as requested by appellants; (2) the damages awarded are excessive; and (3) the evidence is not sufficient to sustain the verdict.

About midnight on April 26, 1951, appellee and a Mrs. Dowell, both of whom were employed at the Spaulding Laundry, were riding in a taxicab to their respective homes. Mrs. Dowell lived in an apartment in Moore Court, located on the west side of Twelfth Street just south of Hill Street in Louisville. Both passengers were seated on the back seat, with Mrs. Dowell on the right side and appellee on the left. When the cab reached a point about 20 feet from the entrance of Mrs. Dowell's apartment, it stopped to let her out. She told the driver to move up in front of the entrance, where a second stop was made. While Mrs. Dowell was in the act of opening the door to alight, a truck driven by Thompson ran into the rear of the cab.

Thompson testified that no rear lights were burning on the cab and no red reflector was displayed as required by KRS 189.050(1). Appellee's case is predicated on the appellants' alleged failure to comply with this statute. Thompson stated that at the time of the impact his truck was in second gear and that the collision occurred about 20 feet from the corner of Twelfth and Hill Streets. At that point, a car parked at the curb on the west side of him pulled out into his path and to avoid striking the car, he swerved his truck to the left and ran into the cab. He stated that he did not see the cab until he swerved to keep from hitting the other car, at which time the cab was about 12 feet in front of him.

The cab driver and appellants' traffic supervisor testified that the rear lights were in good condition and were burning after the accident. Two police officers who investigated the accident testified as to statements made by Thompson immediately after the accident which were contradictory of his testimony at the trial.

Appellants' first complaint is directed at the failure of the court to instruct the jury as to the duties of Thompson in the operation of his truck. It is argued that the failure to do so made it impossible for the jury to determine the degree of Thompson's negligence and the extent to which it was the proximate cause of the accident. Sweazy v. King, 248 Ky. 432, 58 S.W.2d 659, is relied upon as requiring such an instruction.

In the Sweazy case, Mrs. Sweazy was injured when an automobile driven by her husband, in which she was riding, collided with a car operated by King. We there approved an instruction defining the duties of the husband, although he was not a party to the action, upon the theory that if the collision resulted solely from his negligence, King was not liable. Here, the jury was instructed that Thompson was negligent and a verdict was directed against him. This was the equivalent of telling the jury that his negligence either directly caused or concurred with the negligence of another in bringing about the collision. Since the jury was informed that Thompson was negligent, it would seem wholly unnecessary to define his duties. We do not think such an instruction was required under the circumstances.

A more serious question is presented in considering appellants' complaint that the verdict is excessive. Appellee testified that since the accident she either consulted or was treated by three physicians and a chiropractor. Only one witness, Dr. Block,

a physician, testified as to her injuries and their effect. This witness testified that he examined appellee on April 28, 1951, at which time she was complaining of pain in her back from her left shoulder down to the waist. The only sign of traumatic injury which he observed was a bruise on her back. The size or severity of the bruise is not indicated. Her back was taped and she was given demarol and antispasmodics. She was unable to return to work for about seven days. Dr. Block treated her in his office at weekly or ten day intervals until July 1, 1951, and the last time he saw her she still had some soreness in her back. An X-ray picture was taken which revealed some arthritic changes of her lumbar dorsal spine but no evidence of an injury. The pain in her back was diagnosed as arthritis, which Dr. Block said might have been accelerated as the result of an injury. In testifying upon the question of whether or not an injury could have caused the arthritis, he testified as follows:

"Q. Now, arthritis—that is a slow formation? A. It can be slow, yes.

"Q. I know, but isn't it true, Doctor, that that is a slow formation? A. Slow?

"Q. Yes. A. It is gradual.

"Q. It comes on gradually? A. Generally.

"Q. You took the X-rays at that time you first examined her? A. That is correct.

"Q. Did you find any evidence of arthritis then? A. That is right.

"Q. You did? A. Yes.

"Q. So, then, the accident didn't cause the arthritis that you found from your X-rays, did it? A. I never thought it did. Never said it did."

■ The evidence here suggests nothing more than a bare possibility that a somewhat painful case of arthritis may have been aggravated to some extent by this injury. The medical expenses and loss of time, though slight, may well have been the result of the arthritis and not attributable in any extent to the injury. It is a fair assumption that the other doctors who treated appellee but were not introduced as witnesses in her behalf would not have strengthened her case. Scott v. Slater, Ky., 253 S.W.2d 232.

■ The adequacy or inadequacy of damages awarded on account of personal injuries cannot be measured properly from adjudicated cases, nor can any general rule on the subject be laid down. The question must be determined by the facts peculiar to each case, and because of the variable value of the dollar, an award of the same amount at one time may be excessive, while at another time it may not. Therefore, no useful purpose would be served by reviewing our many cases on the subject. Without further elaboration, we may say that the verdict in this case strikes us as being entirely disproportionate to the injury. We think it is so excessive as to indicate passion and predjudice on the part of the jury. The motion for a new trial should have been sustained on that ground.

■ Finally, appellants insist that the evidence of their negligence amounts to no more than a scintilla and that the court should have directed a verdict in their favor. Although the preponderance of the evidence is to the effect that the rear lights of the cab were burning at the time of the collision, we think the testimony of the truck driver was sufficient to make an issue of fact for the jury on this question.

The judgment is reversed for proceedings consistent with this opinion.