**FIELD PACKING COMPANY et al.,**
Appellants,

v.

**Wilton DENHAM, Appellee.**

Court of Appeals of Kentucky.

Jan. 27, 1961.

Coleman, Harlin & Orendorf, Bowling Green, for appellant.

Wilson & Nunn, Glasgow, B. M. Vincent, T. H. Demunbrun, Brownsville, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for $52,-761.65 for personal injuries and special damages resulting from an automobile accident. The verdict was for $50,000 for "suffering and injuries and loss of earning power" and $2,761.65 for lost time, medical and hospital expenses and damage to the plaintiff's automobile. The appellants do not question the verdict of negligence or the amount of the special damages, but they contend the $50,000 for personal injuries is excessive.

The appellant, Field Packing Company, is a processor of meat with plants at Bowling Green and Owensboro. Its co-appellant, George Bell, an employee, was driving a truck making deliveries on the morning of January 3, 1958. The appellee, Wilton Denham, an employee at a feed mill and store near Brownsville, signaled his intention to turn left into the mill entrance. While he was stopped, waiting for opposite traffic to pass, his car was struck behind by the defendant's truck coming down a grade with defective brakes. That was the plaintiffs' evidence. The defendant's evidence, insofar as it may affect the matter of damages, was that the truck was not going over ten or fifteen mph and the impact was not severe. The driver admitted his brakes were bad and it was impossible for him to stop the truck. He could not go around plaintiff's car without colliding head-on with an approaching car. We state in detail the evidence relating to the plaintiff's injuries.

The plaintiff testified he was 45 years old and lived with his wife and three children on a small farm, which he owned and operated. The kind of work he did at the mill was not shown. His wages were $30 a week. He was in good health before the accident. He was knocked unconscious by the collision and taken to a hospital in Bowling Green, stayed there three days, then was treated at home, and not long afterward spent four days in a clinic at Glasgow, where his neck was put in traction. His hearing in one ear has been impaired. He had to wear the neck brace constantly up until the time of the trial of the case, eleven months later. He had been unable to do any work since the accident and suffered pain and great discomfort from the brace.

Dr. S. E. Farmer, of Brownsville, was called to the scene of the accident and found the plaintiff was "suffering most probably from a whiplash." The doctor provided temporary support for his neck and sent him to a Bowling Green hospital. Dr. Funk, who attended him there, did not testify. Seventeen days after the accident Dr. Bryant examined the plaintiff at a clinic in Glasgow. He found no bone fracture but "a great deal of spasm" in the neck muscles caused by whiplash or jerk. It was necessary that the patient wear a neck brace to relieve pain. Dr. Thomas M. Marshall, a Louisville neurologist, to whom Dr. Bryant had referred the patient, examined him on October 1, 1958, nine months after the injury. Dr. Marshall related as the history of the case given him by the patient that he had had continuous pain in his neck, intermittent blurring of vision when he bent over, and "almost a blackout when he would straighten up." This doctor made extensive examinations and tests. He testified that he found no "objective signs of neurological involvement," or of a "nervous disturbance." He expressed the opinion that the plaintiff was "suffering from some residual discomfort from an overstretch type of injury to the muscles and ligaments in the neck from which he should recover without any permanent residuals." Dr. Marshall further

testified: "I noted that he had worn a brace for the past nine months, and it was my opinion that he would benefit by the removal of this brace along with muscle exercises, massage and heat to the areas. I felt that he had had sufficient immobilization. I could not find any explanation for the nerve deafness on the left side, and I felt that it might possibly be a disturbance of long standing. There was no evidence of any injury or fracture to the auditory region on the X-ray as I viewed it."

The evidence as to the plaintiff's later condition and the prognosis was as follows:

Dr. Farmer testified the plaintiff had not been as responsive to treatment as other whiplash cases he had treated and expressed the opinion that even if the muscles and tendons healed, "he would be more prone to receiving similar injuries" and that "in neck injuries there is a possibility of post traumatic arthritis."

Dr. Bryant, upon a recent examination, advised the plaintiff that it was not necessary for him to wear the neck brace at all times but that he should wear it when riding or doing anything that might give him a sudden jerk "because he is susceptible to further injury." The plaintiff was still having pain from some neck muscle spasm, which the doctor believed would continue for some time. Asked as to the permanency of his patient's condition, Dr. Bryant compared a whiplash injury to a sprain and added, "No one can definitely say that in a certain time they will be over them." The witness did not undertake to express an opinion as to the permanency of the injury.

Dr. Marshall did not regard the plaintiff's condition or discomfort as being permanent.

The above is all of the evidence concerning the plaintiff's injuries except impairment of his hearing. As to that, Dr. Weldon, who examined him in February, not long after the accident, found about one-third impairment in one ear, which he at-tributed to a hemorrhage connected with the injury reported to him.

Dr. Alec Forrester, a Louisville ear specialist, examined the plaintiff some time after the accident. He then complained of ringing noises and some dizziness. The doctor found no injury to the plaintiff's ear, but the impaired hearing led him to "suspect inner ear damage." Because he could not quite understand from what he found by several tests why Denham would be claiming almost complete deafness, the doctor suggested that he see Dr. Brown, "which I believe he has done." But no Dr. Brown testified in the case.

We think the evidence, as above fully recited, fails to prove substantial permanent injury. At least, there is uncertainty of permanency and dubiety of degree.

One injured by the negligence of another is entitled to recover of him full compensation for all damages proximately resulting from the negligence. There is, however, no legal yardstick for measuring and no slide rule for computing compensation for pain and suffering to which a party may be subjected as the consequence of the wrong. There is only the broad and general rule of reasonableness, free from sentiment or fanciful standards, and, as well, free from the imposition of punishment for an aggravated act where the circumstances are not of a character authorizing submission to the jury of the question of allowing punitive damages. And compensation for future impairment of earning power or the lessening of the party's ability to work in consequence of his injuries is often difficult to estimate.

So, there is no mathematical formula by which an appellate court or a trial court may determine whether a verdict of damages for personal injuries is excessive. The determination depends upon the facts of the particular case and what compensation has been held in other like cases to be fair and reasonable for similar injuries, giving consideration to changed economic

conditions since the precedents were established. Bruner v. Gordon, 309 Ky. 29, 214 S.W.2d 997; Roland v. Murray, Ky., 239 S.W.2d 967; Louisville & N. R. Co. v. Young's Adm'x, Ky., 253 S.W.2d 585; Louisville Taxicab & Transfer Co. v. Langley, Ky., 265 S.W.2d 931; Fields v. Baker, Ky., 329 S.W.2d 376.

█ Our reluctance to set aside a verdict as being excessive does not preclude our doing so where the amount seems disproportionate to the actual damages suffered and it appears the jury may probably have been actuated by sympathy or by bias, prejudice or like unjudicial and improper motive. It has been said frequently that this conclusion is reached when, "at first blush," the award strikes the judicial conscience as being grossly excessive.

█ In the present case, we are persuaded that the verdict of $50,000 compensatory damages was reached by the minds of the jury being blurred by the urge to penalize the defendants for operating on the highways a heavily loaded truck, knowing its brakes were defective. Substantial proof of probability of permanency of the injuries is absent, and evidence as to the degree of future impairment of earning ability is weak and dubious. We, therefore, conclude the judgment should be set aside. Tichenor v. Roll, Ky., 253 S.W.2d 13. In the extensive notes on excessiveness of damages for personal injuries, 16 A.L.R.2d 3, at page 310, et seq., are cases of neck injuries in which damages in various sums were held excessive. Others are listed in the 1960 issue of the Supplemental Service, page 1284. Notes on cases of impairment of hearing appear at pages 204 and 1233, respectively.

In Ingram v. Galliher, Ky., 309 S.W.2d 763, 766, one of the plaintiffs had suffered a whiplash injury, and the evidence concerning it was much like that in the instant case. The doctors were hesitant and indefinite in declaring the character of the injury with respect to permanency. We wrote: "It is an established rule that to warrant a recovery for permanent injuries, the future effect of the injuries sustained must be shown with reasonable certainty. The evidence must be positive and satisfactory, although it need not conclusively show the condition to be permanent. So, a mere conjecture or even probability of lasting disability does not warrant recovery for permanent impairment of earning power. We have many cases to this effect." We concluded that the indefinite evidence did not authorize an instruction on permanent injury and remanded the case for retrial only upon the issue of damages. In doing so, we noted that only three months had elapsed between the accident and the trial. The present case was tried about eleven months after the accident. It is likely that by the time another trial is had, the plaintiff's condition will have become stabilized and the doctors will be in a position to determine more positively the question of permanency and estimate more definitely the degree of impairment, if any. Cf. L. & N. R. Co. v. Mattingly, Ky., 318 S.W.2d 844, second appeal, Ky., 339 S.W.2d 155.

Judgment reversed.