Carl BOEHM, Appellant,

v.

Rema HISHMEH, by Her Next Friend, John Hishmeh, Appellee.

Court of Appeals of Kentucky.

Dec. 15, 1967.

Harry H. Wilson, Glay E. Maggard, Munfordville, Terry L. Hatchett, Glasgow, for appellant.

Joseph R. Huddleston, Huddleston & Huddleston, Bowling Green, for appellee.

EDWARD P. HILL, Judge.

Appellant's attorneys appeal on his behalf from a $12,500 judgment of the Hart Circuit Court. Appellant Carl Boehm was not present at the circuit court trial, and his attorneys do not know how to locate him. They are appealing at their own expense because of errors which they believe are "abundantly apparent from a casual reading of the record."

In June 1962, appellee Rema Hishmeh, then six years of age, lived with her parents who operated a motel in Hart County. Appellant Carl Boehm lived in a small house which was a short distance away from and plainly visible from the motel. He is accused of willfully and maliciously assaulting appellee and forcing her to enter into indecent acts on two separate occasions. To summarize the sequence of events, appellee told her parents about the incidents the night after the second incident (the first incident occurred one week earlier); her parents did not believe her story at first and played cards with appellant that night as was their custom. They did not obtain a warrant of arrest for appellant until the next day.

The grand jury returned two indictments, one for each of the alleged incidents. At the trial of the first indictment, the court ruled that the girl was incompetent to testify because she did not know the meaning of an oath or what would be the result of perjury. Since the defendant had been placed in jeopardy, he was discharged.

The second indictment was later dismissed for lack of competent evidence.

In February 1964, eighteen months after the alleged incidents occurred, appellee by her next friend, her father, brought this action demanding "$50,000 in exemplary and punitive damages" and "$20,000 compensatory damages for the destruction of plaintiff's reputation, the reputation of her family, disgrace suffered and great mental anguish."

The case first came to trial in April 1965. During a recess, one of the jurors suffered a heart attack, and the jury was discharged and the case was continued.

Illness of the defendant prevented the case from coming to trial until April 1966. Before that time, however, he left town and all efforts to locate him have failed. Attorneys for appellant again moved for a continuance. The court overruled the motion saying: "It appears to this court that it has gotten to the point where the defendant does not show any interest in his own case and that his absence is inexcusable and the case ought to be tried."

The case was tried, and the jury returned a verdict for $12,500 in compensatory damages. No exemplary or punitive damages were awarded. The attorneys for appellant then appealed in his behalf.

The first question raised by appellant is whether the defendant has a right to have the trial court determine the competency of an infant witness at the second trial of the case where the infant was questioned and found competent at the first trial of the case. To review the facts pertinent to this issue: Appellee was six years old when the incidents allegedly occurred; shortly thereafter at the trial on the first indictment she was found *incompetent* to testify. At the first civil trial, when she was nine, she was questioned by the judge and found to be *competent* to testify (this trial was stopped because of the death of one of the jurors); and at the second trial, when she was ten, the judge refused to question her as to her

competence and allowed her to testify on the basis of his finding at the first trial that she was competent. Appellant contends that he had a right to have the infant's competency determined at the second trial because competency at one trial does not determine competency at a later trial, and the competency of a witness is to be determined at the time the testimony is given. In support of his position appellant cites Whitehead v. Stith, 279 Ky. 556, 131 S.W.2d 455 (1939); Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054 (1941); and 97 C.J.S. Witnesses § 58, page 450, note 94.

While this authority supports appellant's argument, it also points out that the question of competency of witnesses is primarily a question to be decided in the sound discretion of the court. The facts of the case at bar show that this same witness was questioned by this same judge at the first civil trial and she was found competent. He also heard her testify at the first trial. The only change which would affect her competency would be her age; and, because she is now older, any change would probably make her more competent and therefore better able to understand that she must tell the truth and the consequence of a lie. In the absence of any indication of other changes, we do not see how this can be an abuse of discretion requiring reversal. See York v. York, Ky., 280 S.W.2d 553 (1955), holding competency of the infant witness to be in the sound discretion of the court. Note also that the date of the competency of a child to testify is the time when he is offered as a witness, not the time of the alleged incidents. *Davenport*, supra.

Appellant's second contention is that the court erred when it refused to allow appellant's attorneys to read the discovery deposition of appellant, which was taken as if on cross-examination by appellee's attorneys. Appellant relies on CR 26.04(3), which insofar as applicable provides:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: The witness is * * * absent from the State; * * * or is of unsound mind, having been of sound mind when his deposition was taken; or is prevented from attending the trial by illness, infirmity, or imprisonment; * * * or that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

Appellant's attorneys argue that because the defendant was apparently absent from the State and it was hinted that he was ill this case comes within the above rule. In any case, they deem the circumstances exceptional and therefore within the rule.

The trial judge refused to let the deposition be read apparently on the ground that it would be a "manifest injustice" to allow a party to absent himself from the trial without an excuse in order that his deposition rather than his oral testimony be heard by the jury. At the trial, appellee also pointed out that the questions asked on discovery are not always the same as the questions asked at trial or in a deposition taken to be read at trial. Some questions will be held back as a matter of tactics. For these reasons, a party should not be allowed, in effect, to exercise an option between a deposition and oral testimony by either attending or not attending his trial. Federal Rule 26(d), from which CR 26.04 was taken, has an express provision denying the use of the deposition of a witness where the witness' absence was procured by the party offering the deposition. The use of the rule was demonstrated in Velvelstad v. Flynn, 230 F.2d 695, 16 Alaska 83 (1956). Kentucky does not have this provision, but the reasons for the rule are sound.

It should be remembered that CR 26.04(3) allows the reading of deposition *"if the court finds"* any of the conditions listed therein exist. In the present case, there was no such finding by the trial court.

■ Appellant's next contention is that the court erred when it sustained appellee's motion for a directed verdict because plaintiff's testimony was not corroborated; there were conflicts in plaintiff's testimony; there was a total lack of evidence of mental suffering; and the question of the child's credibility was for the jury. Appellee argues that the child presented a *prima facie* case which was unrebutted and that appellant's failure to appear raised an inference that his testimony would have exposed facts unfavorable to him.

The fact that plaintiff's testimony was uncorroborated makes no difference by itself. Appellant cites no authority for the proposition. Also the conflicts in appellee's testimony were not material to the issue of whether appellant committed the acts of which he was accused. On that point her testimony was positive. Appellee did state that she was embarrassed by the incidents, and the several different trials show that they came to the public's attention. The evidence is uncontradicted that the incidents occurred and some mental anguish and humiliation must accompany such an assault.

The real issue in this argument seems to be whether the jury should have been permitted to consider the question of the child's credibility. If so, then a directed verdict was improper. In Roberts v. Respass, 131 Ky. 10, 114 S.W. 341, 342 (1908), this court said:

"It may be conceded that where the testimony is all one way, and there are no facts or circumstances or other testimony tending to contradict the testimony of plaintiff, it is proper for the trial court to give a peremptory instruction in favor of the plaintiff."

See also Blackburn v. Kentucky & West Virginia Power Co., Ky., 243 S.W.2d 995 (1951). Appellant is the one person who could have contradicted her testimony, and he did not attend the trial. It therefore appears that the trial court properly directed the verdict for plaintiff.

■ Appellant next argues that even if a directed verdict was proper, the instruction on mental anguish and humiliation should not have been given because there was not any real evidence to support it. All that appellee said on this matter in response to her attorney's question of whether she was embarrassed by what had happened was: "Yes." There was no indication that the incidents were ever mentioned to her except in preparation for trial. It is appellant's contention that the instruction should have included the phrase "if any there was" with reference to mental anguish or humiliation. Appellee argues, correctly we think, that this objection to the instruction is too late, that is, specific objections to instructions should be made before the instruction is given. Young v. De Bord, Ky., 351 S.W.2d 502, 503 (1961), is in point. There, appellant first objected to certain instructions because "there is no evidence in the record" on which to base them. On appeal, specific defects in the instructions were raised for the first time. This court said:

"Appellants in the trial court protested the submission of the instructions on a general ground. On this appeal they have changed their approach and now undertake to pinpoint certain alleged errors. Obviously, CR 51 condemns such a practice and, in consequence, we must hold they cannot now be heard on these matters. See the recent case of Chaney v. Slone, Ky., 345 S.W.2d 484."

■ Appellant's final argument is that the jury's award is at first blush excessive. In Koch v. Stone, Ky., 332 S.W.2d 529, 532 (1960), this court said:

"The adequacy and inadequacy of damages cannot be measured properly from adjudicated cases, nor can any general rule on the subject be laid down. The facts of each case must determine the amount of the verdict. Roland v. Murray, Ky., 239 S.W.2d 967; Louisville

Taxicab & Transfer Company v. Langley, Ky., 265 S.W.2d 931."

Under the facts of the case at bar it cannot be said that at first blush the damages are excessive.

The judgment is affirmed.

All concur.