**Charles Kenneth PIERCE, Appellant,**

v.

**Billie WILLIAMS, Appellee.**

Court of Appeals of Kentucky.

Nov. 28, 1969.

William Donald Overbey, Overbey, Overbey & Overbey, Murray, for appellant.

L. M. Tipton Reed, Neely & Reed, Mayfield, for appellee.

STEINFELD, Judge.

Claiming that a judgment of $17,500.00 entered pursuant to a jury verdict rendered to compensate Billie Williams, age 45, for injuries he received in an automobile accident was excessive, Charles Kenneth Pierce appeals. Having concluded that it was not excessive we affirm. Liability is not questioned.

On August 11, 1966, an automobile driven by Pierce made a left turn in front of a taxicab driven by Williams and they collided. Williams was injured but he directed traffic for about 45 minutes until the police arrived. He was taken to the Mayfield Hospital where he remained two and one-half hours and then he went to his home. He had received a lacerated wound to the head which was sutured with six or seven stitches. His chest had hit the steering wheel resulting in a fracture of four or five ribs. His left shoulder was injured as was his right knee when it hit the fare meter of the cab.

From that time until September 22, 1966, Williams was treated 16 or 17 times by Dr. Jacob Mayer as a hospital outpatient. On September 22, 1966, Williams visited Dr. Hilary Hunt who testified that upon examination he found that Williams "had a well-healed scar on his left forehead, that his shoulder there was grinding within it" and pain was apparent when the shoulder was rotated. This same pain was experienced when Williams raised his arm straight up against resistance. This doctor found tenderness in front of the shoulder in the region of the biceps tendon and marked tenderness over the right lower rib cage and over the middle portion of the sternum. The right knee was discolored in a small area and it too was tender. His diagnosis "* * * was that of acute biceps teno-synovitis of his left shoulder due to trauma and * * * a severe contusion of his chest and a contusion of his right knee and a laceration of his scalp which had healed." Dr. Hunt related the many visits between that date and July 26, 1967, when Dr. Hunt left for military service. In the meanwhile this doctor injected the bicep tendons on at least two occasions and discovered that there was an ununited fracture of the sternum. On occasions he took X-rays to determine the progress of the healing, recommended pain-killing medication and advised Williams to restrict his activities.

On May 10, 1967, on recommendation of Dr. Hunt surgery was performed on Williams who had never been free of pain. The sternum was exposed, his right hip was opened and bone was taken from the right pelvic region and placed across the fracture site. The chest incision began just below where the collar bone attaches to the breastbone and ran down the chest for approximately six inches. The covering tissues were stripped to expose the bone and nonunion site and scar tissue was scraped out, a trough was cut in the outer surface of the breastbone and the bone from the pelvic area was inserted into the trough "* * * to bridge the fracture site to help heal it." The operation took about one and three-fourth hours. Williams was discharged from the hospital on May 18, 1967. He returned on July 3, 1967, for examination and because of complaints that he still experienced pain but no treatment was given at that time. Again on the 26th day of July, 1967, he visited

Dr. Hunt complaining that he still had pain in his left shoulder. Dr. Hunt stated that there was tenderness in the shoulder area but that the nonunion of the bone and chest had completely healed. He expressed the opinion that the biceps teno-synovitis was causing the anterior chest and arm pain and Dr. Hunt recommended that he seek further treatment if the pain persisted. Following that advice Williams was given therapeutic treatment at a clinic in Memphis, Tennessee.

Dr. Hunt testified that Williams was permanently disabled approximately 12% to the body as a whole. With respect to chances for employment Dr. Hunt said: "Well, the man can be expected to have continued pain and limited motion in his left shoulder which would interfere significantly with the use of his arm for anything that required use of the arm."

Dr. Arnold Haber testifying for Pierce stated that he found no disability in Williams when he examined him on August 15, 1968. Williams had been advised that he should have another operation to correct the teno-synovitis but Dr. Haber felt this was unnecessary and considered it a degenerated condition which resulted from normal usage, wear and tear of the body.

On trial, held in April 1968 Williams told the jury that he continued to have pain in his middle chest and in his left shoulder and that his knee still bothered him on occasions.

The evidence showed that medical expenses up to the date of trial had been $1,153.61 and the doctor estimated that the recommended operation for Williams' teno-synovitis would cost approximately $350.00. Williams did not work for a year following the accident but previously his work habits were not steady. He had taught school, had clerked in a grocery store and furniture store, worked as a tobacco handler and driven a taxicab. Up to August 11, 1966, the date of the accident, he admitted that he had earned in that year only $500.82 and that for six weeks' work driving the taxicab he had earned a total net pay of $84.72. He also said that he had drawn unemployment insurance so that his total income for that year was $1,400.00.

Contending that this award should be set aside appellant cites Pagliro v. Cleveland, 302 Ky. 306, 194 S.W.2d 647 (1946), in which we said we could not set it aside except

"* * * where the award appears to be so disproportionate to any reasonable consideration of the proven injury and its results, as to strike the court at first blush that the verdict was not reached in calm deliberation, but resulted from something which in a measure tended to create a passion or prejudice, or some element which might have tended to bias the minds of the jurors."

Conceding that each case must be decided on the facts peculiar to it Pierce cites Field Packing Co. v. Denham, Ky., 342 S.W.2d 524 (1961), in which we said:

"* * * there is no mathematical formula by which an appellate court or a trial court may determine whether a verdict of damages for personal injuries is excessive. The determination depends upon the facts of the particular case * * *".

Appellant contends that it is significant that Williams spent only $12.34 for pain-killing medicine and had bought none since September 3, 1966, but he explained that this medicine was not effective and he saw no reason to continue to purchase or take it. Furthermore, Pierce notes that Williams admitted he had worked at a tobacco plant after the accident with duck bills (the date is not pointed out) "* * * a thing you roll baskets of tobacco on. You have to push it with your hands", and that he drives a car. Williams insists that he only drives with some disability and that he is unable to do hard work.

Appellee relies upon Campbell v. Markham, Ky., 426 S.W.2d 431 (1968), in which

a 28-year-old school teacher sustained comminuted fracture of the head of the humerus which required open surgery to repair. The teacher was hospitalized for five days and returned to work in ten days, incurred medical expenses of $523.50 and up to the time of trial had sustained no impairment to his earning capacity. We said that an award of $36,000.00 for the personal injuries was not excessive and commented: "Nonetheless, his right arm is permanently impaired to the degree of 60%, and even though this has not yet affected his earnings, there are many things both at work and at home that he cannot do, or that he cannot do as well as he did before, and he must take special exercises every day to keep his arm in working order."

Appellee also refers to Arnett v. Thompson, Ky., 433 S.W.2d 109 (1968), in which a 19-year-old student received $20,000.00 which we held was not excessive. She had received an injury to her neck and thoracic lumbar spine which a physician had said was "* * * certain to become chronic."

Williams cites Spurlock v. Spurlock, Ky., 349 S.W.2d 696 (1961), in which a 68-year-old housewife recovered $6,000.00 for back injuries that troubled her while resting and sleeping and prevented her from doing her household duties. The facts are so different that Spurlock is of no help to us in determining the question with which we are now dealing except the statement of law that: " 'Fair and reasonable compensation' is the measure adopted by the courts many years ago because of the universal agreement that a specific or definitive one is impossible, for no standard or mathematical rule will serve as an index or guide."

In 16 A.L.R.2d 3 is an exhaustive review of verdicts that were claimed to be excessive but in 16 A.L.R.2d 393 there is an exhaustive review of those claimed to be inadequate. Also see 12 A.L.R.3d 117. There is no magic formula by which to determine, in this type of case, whether a verdict is or is not excessive, therefore, we use the "first blush" method. Townsend v.

Stamper, Ky., 398 S.W.2d 45, 12 A.L.R.3d 108 (1965).

After careful consideration of the evidence of pain, of treatment and of permanent disability we are unable to say that the jury was not justified in reaching the verdict it returned.

The judgment is affirmed.

All concur.